FILED
 2014 Aug-22  PM 03:23
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JAMIE S. ISABELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 1:13-cv-0229-AKK |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Jamie S. Isabell ("Isabell") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Isabell, whose past relevant experience includes work as bartender, radiology technician, and waitress, filed an application for Title II disability insurance benefits on January 2, 2009, alleging a disability onset date of January 6, 2009. (R. 22). Isabell alleges she is disabled due to neck, shoulder, and back pain, insomnia,

attention deficit hyperactivity disorder, headaches, carpal tunnel syndrome, depression, anxiety, Chiari malformation,[1] and hemorrhoids.  (R. 52-68, 74-76).  After the SSA denied Isabell's claim, she requested a hearing before an ALJ.  (R. 98-99).  The ALJ subsequently denied Isabell's claim, (R. 19-38), which became the final decision of the Commissioner when the Appeals Council refused to grant review.  (R. 1-6).  Isabell then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district

---

[1]  Chiari malformations (CMs) are structural defects in the cerebellum, the part of the brain that controls balance.  Normally the cerebellum and parts of the brain stem sit in an indented space at the lower rear of the skull, above the foramen magnum (a funnel-like opening to the spinal canal).  When part of the cerebellum is located below the foramen magnum, it is called a Chiari malformation.

http://www.ninds.nih.gov/disorders/chiari/detail_chiari.htm

court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

3

abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the five step analysis, the ALJ found that Isabell had not engaged in substantial gainful activity since January 6, 2009, and, therefore, met Step One. (R. 24). Next, the ALJ found that Isabell satisfied Step Two because she suffered from the severe impairments of "carpal tunnel syndrome, degenerative disc disease in the neck, and possible Chiari malformation." *Id*. The ALJ then proceeded to the next step and found that Isabell failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 25). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Isabell has the residual functional capacity (RFC) to perform

> light work as defined in 20 CFR 404.1567(b) except [Isabell] is limited to frequent manipulative work (grasping, handling, and fingering) with the right dominant hand. She is unable to do any forceful gripping with right hand.

(R. 26). In light of her RFC, the ALJ found that Isabell "is capable of performing past relevant work as a bartender, radiology technician and waitress."[2] (R. 36). Therefore,

---

[2] The ALJ alternatively found that in light of her RFC, Isabell, who was 35 years old as of the date of the ALJ's decision and had at least a high school education, could perform other jobs that exist in significant numbers in the national economy. (R. 36).

the ALJ found that Isabell "has not been under a disability, as defined in the Social Security Act, from January 6, 2009, through the date of this decision." (R. 37).

## V. Analysis

The court now turns to Isabell's contentions that the ALJ erred because he (1) did not address all of Isabell's "severe" impairments; (2) relied on the State agency RFC assessment; and (3) rejected the opinions of her treating physicians. *See* doc. 11 at 8-14. The court addresses each contention in turn.

### A.   Severe Impairments

Isabell contends the ALJ erred because he did not find her mental impairments were severe at Step Two. According to Isabell, the report of the SSA's consultative examiner, Dr. Robert A. Storjohann, Ph.D., "demonstrates the existence of a severe psychological problem or a combination of severe psychological problems" that requires a remand for the Commissioner "to consider the potential psychological basis of disability . . . through the final steps of the sequential evaluation." Doc. 9 at 9. Isabell's contentions miss the mark for the reasons stated below.

As a threshold matter, the court notes that the ALJ found in Isabell's favor at Step Two and that, in this circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," so long as the ALJ considered Isabell's impairments in combination at the later steps. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Moreover, the regulations state

that the only consequence of the analysis at Step Two is that if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability. *See* C.F.R. § 404.920(c)a)(ii).  Here, the ALJ found multiple severe impairments–carpal tunnel syndrome, degenerative disc disease, and possible Chiari malformation–and proceeded with the sequential evaluation process.  Significantly, the ALJ recognized that he "must consider all of [Isabell's] impairments, including impairments that are not severe," in assessing her RFC.  (R. 23).  Indeed, the ALJ discussed extensively Isabell's mental healthcare treatment and Dr. Storjohann's consultative evaluation in weighing the evidence, which shows the ALJ considered Isabell's impairments in combination.  *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir.1991) (ALJ's consideration of the claimant's combined impairments at later steps in the sequential evaluation process is sufficient to show the impairments were considered in combination).

In the end, the ALJ gave little weight to Dr. Storjohann's opinions, and set forth specific reasons for doing so.  First, the ALJ properly considered that Dr. Storjohann "only examined [Isabell] once," (R. 34), because "[g]enerally, [the ALJ] give[s] more weight to opinions from . . . treating sources." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Second, the ALJ properly considered that Dr. Storjohann "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Isabell]."  (R. 34).  There is no error because an ALJ may

reject a physician's opinion when it "appears to be based primarily on [a claimant's] subjective complaints." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Third, because the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," *Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983), the ALJ properly found that "[Dr. Storjohann's] opinion contrasts sharply with the other evidence of record, including the treatment notes provided by Cheaha Mental Health," and that Isabell's "mental health history and her course of treatment . . . renders [Dr. Storjohann's opinion] less persuasive." (R. 34). Finally, the ALJ had good cause to reject Dr. Storjohann's opinions because of the ALJ's finding that they were "inconsistent with [Dr. Storjohann's] benign findings on mental status testing, which indicated intact orientation, memory, concentration, fund of information and simple calculation." (R. 34); *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The court finds no error because the substantial evidence supports the ALJ's decision to reject Dr. Storjohann's findings.

Contrary to Isabell's contention, the ALJ throughly explored the potential psychological basis for disability, but ultimately rejected Dr. Storjohann's opinions in finding Isabell's mental impairments were not disabling. Accordingly, any error resulting from the ALJ's failure to identify Isabell's mental impairment as severe at Step Two is harmless because it did not, in any way, change the ALJ's decision. *See*

*Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983)).

  B. <u>The State Agency RFC</u>

 Isabell contends next that the ALJ improperly relied on the RFC completed by State agency nonexamining physician, Dr. Richard Whitney, "because it is based on less than all of the medical evidence tendered in this case." Doc. 9 at 10. The court notes that an ALJ must consider the findings of a State agency medical consultant, who is considered an expert, and must explain the weight given to such findings in the same way as with other medical sources. *See* 20 C.F.R. § 416.927(e)(2). Consistent with the regulations, the ALJ noted that both State agency medical consultants were "specialists for the Social Security Administration," and "well versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act." (R. 34). The ALJ further explained that the consultants' opinions were entitled to "great weight" because "[t]heir opinions are consistent with the objective medical evidence of record." *Id.* Because the ALJ found Dr. Whitney's RFC was consistent with the "medical evidence of record," including medical records received after Dr. Whitney made his RFC assessment, Isabell's contention is without merit. Significantly, as the Eleventh Circuit has recognized, "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

Accordingly, the ALJ properly considered Dr. Whitney's RFC assessment, together with the other evidence in the record, in determining Isabell's RFC. In fact, the ALJ's RFC assessment was more restrictive than Dr. Whitney's because it limited Isabell to only frequent grasping and fingering, and provided that Isabell was "unable to do any forceful gripping with the right hand."[3]  (R. 26). These additional restrictions show that the ALJ considered additional evidence in the record and did not rely excessively on Dr. Whitney's RFC assessment.

      C.    <u>The Opinions of Isabell's Treating Physicians</u>

Finally, Isabell contends the ALJ erred by failing to adopt the opinions of her treating physicians. Doc. 9 at 12-15. The medical records show that Dr. Wael Hamo, a neurologist, treated Isabell from 2005 through January 13, 2011. (R. 478-516, 525-29, 557, 565). Dr. Hamo also completed a physical capacities evaluation (PCE) and a Clinical Assessment of Pain Form on October 7, 2009, indicating that Isabell would be able to walk/stand for only one hour in an eight-hour work day, would miss more than four days of work per month, and had pain that was "distracting to adequate performance of daily activities or work." (R. 476-77). Dr. Basel Refai, Isabell's primary care physician, treated Isabell from 2004 through February 9, 2011. (R. 399-

---

[3] In these areas Dr. Whitney only limited Isabell to frequent handling bilaterally due to carpal tunnel syndrome. (R. 392).

475, 522-24, 532-33, 543-44, 554-55, 562).[4]  Dr. Refai also completed a PCE and pain form on May 8, 2009, indicating that Isabell would be able to sit for only one hour and walk/stand for only one hour in an eight-hour work day, would miss more than four days of work per month, and had pain that was "distracting to adequate performance of daily activities or work."  (R. 397-98).  Dr. Refai also wrote a letter on October 6, 2010, stating that Isabell "is totally unable to work," and is "permanently disabled."  (R. 543).

Isabell contends that Dr. Hamo's and Dr. Refai's opinions establish that she is disabled and, consequently, argues the ALJ erred in giving little weight to the opinions.  To determine how much weight, if any, to give these opinions, the ALJ had to consider several factors, including whether the doctors (1) had examined Isabell; (2) had a treating relationship with Isabell; (3) presented medical evidence and explanation supporting the opinion; (4) provided an opinion that is consistent with the record as a whole; and (5) is a specialist.  *See* 20 C.F.R. § 416.927(c).  Because these doctors are treating physicians, the ALJ must give "controlling weight" to their

---

[4]  Isabell submitted additional medical records to the Appeals Council, including treatment notes for visits to Dr. Hamo and Dr. Refai that occurred after the ALJ's decision.  (R. 6).  The Appeals Council determined that the additional records did not affect the ALJ's decision that Isabell was not disabled on or before April 1, 2011.  (R. 2).  Because Isabell does not challenge the Appeals Council's decision to deny review, this court may not consider this evidence in determining whether the ALJ's decision is supported by substantial evidence.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266 (11th Cir. 2007).

opinions if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2). Moreover, in this circuit "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records. *Id*. Finally, if the ALJ rejects a treating physician's opinion, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion . . . and the failure to do so is reversible error." *Id.*

    Contrary to Isabell's contention, the ALJ correctly applied the law and articulated multiple reasons for giving her doctors' opinions "little weight." Initially, the ALJ correctly found that Dr. Refai's statements that Isabell "is disabled" and "unable to work" are on an issue reserved to the Commissioner, (R. 32), and, therefore, are not medical opinions. *See* 20 C.F.R. § 404.1527(d)(1). Regarding Dr. Refai's opinions given on his PCE and pain forms, the ALJ correctly observed that Dr. Refai's "treatment notes were sparse and consisted only of a few illegible lines for each visit," and that Dr. Refai "mentions asthma as a reason for these restrictions but his treatment notes do not contain a diagnosis of asthma or treatment for it." (R. 33).

The ALJ also found that the "course of treatment pursued has not been consistent with what one would expect if [Isabell] were truly disabled, as [Dr. Refai] has reported." *Id.* Moreover, the ALJ found that Dr. Refai's "opinion is conclusory," because it provides "very little explanation of the evidence relied on in forming that opinion." *Id.* Finally, the ALJ found that Dr. Refai's "opinion contrasts with the other evidence of record, which renders it less persuasive." *Id.*

Similarly, the ALJ set forth multiple reasons for his decision to give Dr. Hamo's opinions little weight. First, the ALJ noted that "Dr. Hamo did not give any reasons for these severe restrictions and his opinion is conclusory. For example, he did not state why [Isabell] would be absent more than four times per month." (R. 33). Second, the ALJ found that Dr. Hamo's own treatment notes "fail to reveal the type of significant clinical and laboratory abnormalities one would expect if [Isabell] were as limited as alleged," and that the "course of treatment pursued by Dr. Hamo has not been consistent with what one would expect if [Isabell] had such extreme pain and limitations." *Id.* Finally, the ALJ found that Dr. Hamo's "opinion is without substantial support from the other evidence of record, which renders it less persuasive." *Id.*

Based on the record before this court, it is evident that the ALJ considered the factors set forth in the regulations and, consistent with the law of this circuit, articulated good cause for giving Dr. Hamo's and Dr. Refai's opinions little weight:

13

i.e., that the opinions were conclusory, inconsistent with the doctors' own treatment notes, and not bolstered by the other medical evidence.  *See Lewis*, 125 F.3d at 1440 ("Good cause" exists when opinion is conclusory, inconsistent with the physician's own medical records, or not bolstered by the other evidence); 20 C.F.R. § 416.927(c)(2) (opinion must be "well-supported" by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence to receive controlling weight").  Therefore, because this court does not "reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner," *Martin,* 894 F.2d at 1529, the court finds the ALJ had good cause for rejecting Dr. Hamo's and Dr. Refai's opinions, and committed no reversible error.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Isabell is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

**DONE** this 22nd day of August, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE